(Decided June 13th, 1860.)

---

# FREDERICK L. YINGLING & wife, and GEO. EVERLY & wife, *vs.* ISAAC HESSON.

An order of an orphans court, directing three of four issues asked by distributees, relating to the justice and validity of a claim by an executor against the estate, to be sent to a court of law, and taking *no notice* of the fourth, is, in effect, a *refusal* of such fourth issue.

It is no error in the orphans court to refuse to send, at the instance of distributees, to a court of law for trial, an issue as to whether or not the claim of an executor against the estate was "barred by the *Statute of Limitations* of this State in point of fact."

Lapse of time, as a *legal bar* to a claim, cannot be presented in the orphans court, though that court may look to the fact of such bar as evidence to be weighed, with all other testimony, in relation to any claim in determining *on its justice.*

Where issues are sent to a court of law for trial, the jury is substituted in aid of the orphans court to ascertain the facts, and the proceeding is all the while within the probate powers of that court, and the court of law must decide on the same principles and rules that govern the orphans court.

Where a claim against an estate is presented by an executor, and is resisted by distributees, who, by their petition in the orphans court, ask for issues to try its validity, the executor, the party propounding the claim, is entitled to the position of plaintiff in the trial of such issues.

The general rule is, that the party holding the affirmative of the issue must take the burden of proof, and where a claim by an executor, or any other creditor, of an estate, is resisted and issues are sent to try its

validity, the claimant, on the trial of such issues, ought to open and conclude.

Where different parties, by separate petitions in the orphans court, are resisting a claim upon the same grounds, and ask for issues to try its validity, it is proper for the court to order the proceedings to be united, and the parties to be joined as defendants in the trial of the issues sent.

APPEAL from the Orphans Court of Carroll County.

This appeal is from two orders of the court below, passed in reference to the sending of issues to a court of law, in regard to a claim presented by the appellee against the estate of Peter Hesson, his testator. The issues tendered by the appellants, who were petitioners in the court below, and resisting the allowance of the claim, were:

1st. Whether or not the sum of $5050, or any part thereof, was legally due and owing by the said Peter Hesson, at the time of his death, to the said Isaac Hesson.

2nd. Whether or not the said Isaac Hesson, one of the executors of Peter Hesson, deceased, had a just and legal claim of $5050, or any other sum of money, against the said Peter Hesson, deceased, at the time of his death?

3rd. Whether or not the said Peter Hesson at the time of his death was justly indebted to the said Isaac Hesson in the sum of $5050, or any other sum of money?

4th. Whether or not the pretended debt or claim of the said Isaac Hesson against the said Peter Hesson's estate which he claims to be allowed, is or is not barred by the Statute of Limitations of this State, in point of fact?

The orders appealed from, and the proceedings in the case, are fully stated in the opinion of this court.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*Jos. M. Palmer,* for the appellants, argued:

1st. The appellants tendered four specific issues to be sent to some court of law for trial. The orphans court decided, and ordered, and decreed in writing, signed by the court,

that the first three issues should be sent, but upon the fourth issue tendered the court, neglected and refused to submit to writing and sign any order or decree they may have made touching the same. It was the imperative duty of the court to have decided the whole case as presented by the appellants, and not to select a part of the propositions presented and decide them, and refuse to act upon the other by a decree in writing. All orders and decrees of the orphans court must be in writing. *Act of* 1818, *ch.* 204, *sec.* 3.

2nd. The fourth issue ought to have been sent. It is admitted that the claim of an executor against the estate of the testator stands upon the same footing as the claim of any other creditor, and technically speaking, a legatee or creditor cannot plead the statute of limitations to such a claim, but the Court of.Appeals, in *Bowling vs. Lamar,* 1 *Gill,* 362, use this language: "We do not, therefore, regard the plea of limitations, technically considered as such, applicable to proceedings before the orphans court in relation to the claims of creditors. That tribunal may, it is true, look to *the fact* of such a bar as evidence to be weighed with all other testimony in relation to any claim in determining on its justice." In a case where issues are sent, the jury is substituted in the place of the orphans court, to ascertain the truth and justice of the claim demanded, and the jury are to decide the case upon the same principles that the orphans court should decide it, so far as the facts are concerned. The orphans court could inquire into the fact whether or not the claim was a stale claim and barred by the statute. The intention of the Act of 1798, ch. 101, sub-ch. 15, secs. 16, 17, and sub-ch. 8, sec. 20, in directing issues, was to satisfy the court of the real facts of the case. 4 *Md. Rep.,* 393, *Pegg, et al., vs. Warford.* 3 *Md. Rep.,* 462, *Cain, et al. vs. Warford.* It was proper, therefore, that this issue, which submitted to the jury to find whether this claim was barred by the statute of limitations *in point of fact,* should have been sent for trial.

3rd. There is manifest error in the order in directing that upon the trial of these issues, the appellee shall be plaintiff and the appellants defendants. The order in this respect is

in direct violation of the well settled and uniform practice in this State. It would seem that the law in this State is too well settled to admit of doubt. *5 G. & J.,* 457, *Kearney vs. Gough.* 7 *Gill,* 25, *Brooke vs. Townshend.* 8 *Gill,* 37, *Marriott vs. Handy.* 9 *Gill,* 56, *Ramsay, et al., vs. Glass.* 4 *Md. Rep.,* 386, *Pegg, et al., vs. Warford.* All these cases in relation to the trial of issues clearly show that the party who originates the proceedings in the orphans court—who is the actor—is entitled to be placed upon the record in the court of law in the attitude of plaintiff.

4th. The second order, directing the proceedings on the petition of Joseph Hesson, to be consolidated with those on the petition of the appellants, is, certainly, under the circumstances of the case, a legal anomaly. The consolidation was ordered after the court had decreed in the first case. If, under any circumstances, consolidation would be legally right, it should have been made before the action of the court in the first case. But in truth and in fact, there was no case in court in a condition, and suitable and proper to be consolidated with the proceedings of the appellants. The appellee did not file his answer to the petition of Joseph Hesson until four days before the passage of the order of consolidation, and it was not upon oath, and therefore, in fact, no legal answer. At the time of passing the order of consolidation, no specific issues had been tendered by Joseph Hesson, and there is no evidence in this record to show, even if there had been a good and sufficient answer filed, any issues in any way similar or like those tendered by the appellants would have been tendered by him. How, then, can it be said that the two cases are the same in substance or in any way alike? It is admitted that cases might occur in the orphans court in which it would be proper to order a consolidation, if the application be made in time. 4 *Md. Rep.,* 390, *Pegg, et al., vs. Warford.* If the issues here are sent and tried as ordered, Joseph Hesson would be estopped from hereafter tendering specific issues to try the question involved in his petition. This proceeding might act onerously upon him, for he had no knowledge of the intention to consolidate his case with

that of the appellants. The order is further erroneous in directing the *same* issues to sent. Joseph Hesson had not tendered or claimed any specific issues, and it is difficult to conjecture upon what possible ground the court conjured up issues for him, to be consolidated with those of the appellants. There certainly is no such authority given to the orphans court by the Act of 1798, ch. 101, nor any other Act, and it assuredly cannot be an inherent right in the court. That part of the order which makes Joseph Hesson a co-defendant with the appellants in the circuit court, is liable to the same objection that we have urged under our third point, against making the appellants defendants on the record in the court of law. Both he and they were entitled to the position of plaintiffs.

*Oliver Miller*, for the appellee, argued:

1st. The order granting the first, second and third issues, and omitting all mention of the fourth, was a *refusal* to grant that issue, just as much as if the court had, in express terms, refused to grant it, and by treating the order as a refusal of this issue, the appellants can have the benefit in this court of every objection which they could have urged to an order refusing the same in express terms.

2nd. Treating the order as a refusal to grant the fourth issue, there is no error therein. The claim of an executor or administrator against the estate stands upon precisely the same footing, in all respects, as the claim of any other creditor, and the plea of limitations cannot be set up to such claim by legatees or distributees. The power to plead limitations to the claim of any creditor, is, by our testamentary law, vested exclusively in the executor or administrator. *Act of* 1798, *ch.* 101, *sub-ch.* 8, *sec.* 19, and *sub-ch.* 9, *sec.* 9. 1 *Gill*, 1, *Stevenson vs. Reigart.* 4 *Md. Ch. Dec.*, 465, *Spencer vs. Spencer.* When issues are sent to a jury for trial, the jury are substituted in aid of the judges of the orphans court to ascertain the facts, and the proceedings are all the while within the jurisdiction of that court, (14 *Md. Rep.*, 532, *Warford's lessee vs. Colvin,*) and when it is said in *Bowling*

*vs. Lamar,* 1 *Gill,* 362, that the orphans court may "look to *the fact* of such a bar as *evidence* to be weighed with all other testimony in relation to any claim in determining on its justice, and the propriety of passing or rejecting it," all that is meant is, that the fact that a claim is above three years standing may be looked to *as evidence* in determining on its justice, not that it can be got rid of by the statute as a legal bar, provided the court, upon all the evidence, shall be satisfied of its justice, and the same rule applies to a trial of issues by a jury. They may consider this fact as evidence when considering the justice of the claim, but they cannot, if they are satisfied, on all the evidence, of its justice, say it is unjust, or that it ought not to be recovered against the estate, because of the legal bar of the statute. The jury are to determine the same facts, and upon the same *evidence,* that the court itself would determine, if the case was submitted to the judges without issues, and these facts are simply whether the claim is a just and valid one.

3rd. There was no error in directing that the appellee should be plaintiff, and the appellants defendants, in the trial of these issues. The general rule is, that the party holding the *affirmative* of the issue must take the burden of proof, and is entitled to the position of plaintiff. Here the appellee asserts that he has a claim against the estate of his testator, which the appellants deny. The affirmative of the issue is on him—he must prove his claim. The case could not proceed unless he commences by producing proof of his claim, and how can he do this unless he takes the position of plaintiff? The fact that the other parties were actors in *resisting* the claim, and asking for issues, can make no difference. Suppose no issues had been asked, and the case had been tried in the orphans court, would not the appellee have commenced the proof, and have been entitled to the opening and concluding argument before the judges? In the case of *Brooke vs. Townshend,* so much relied on by the other side, the *issues* conceded the *factum* of the will, but attacked it on the ground of insanity in the testator at the time of its execution. There the affirmative of the issue was on the caveators

—they were to commence by producing proof of insanity; and hence they were held to be entitled to the position of plaintiffs. But suppose the issues had denied the execution of the will, would not the caveatees have had to commence by adducing proof of that fact? In the case of *O'Conner vs. Cook,* 6 *Ves.,* 665, the complainant, the party asking for an issue from Chancery, and the actor in obtaining it, was made, by *Lord Eldon, defendant* on the trial of that issue, and the defendant in equity was made plaintiff, and clearly because the affirmative of the issue was on him. There is no case in Maryland where, under such circumstances as exist here, it has been held that the party holding the affirmative of the issues, should not be made the plaintiff, and no valid reason can be assigned why the appellee should be deprived of the advantages which that position may be supposed to give him.

4th. The consolidation of the case of the petition of Joseph Hesson with that of the appellants, and the direction as to the position which the said Joseph should occupy in the trial of these issues, was also perfectly legal and proper. 4 *Md. Rep.,* 394, *Pegg et al. vs. Warford.* But if there was any error in this order, it was one of which Joseph Hesson alone is entitled to complain. No injury has thereby been done to the appellants, but, on the contrary, if any one is injured, it is the appellee.

TUCK, J., delivered the opinion of this court.

This record shows that Isaac Hesson, one of the executors of Peter Hesson, presented a claim against his testator, which was objected to by Joseph Hesson, his co-executor. The orphans court allowed it as a credit in Isaac Hesson's account as executor, and on appeal this court reversed the order of the orphans court for want of proof of the claim. See 14 *Md. Rep.,* 8. When the record was remanded the present appellants, being some of the legatees, filed their petition objecting to the claim, on the ground that it was not due and owing, that it was false, stale and spurious, and barred by the Statute of Limitations, and praying that the claimant might be required to prove his demand and that issues might

Yingling & wife, *et al., vs.* Hesson.

be sent to a court of law to determine the validity of the claim. This petition was answered on the same day, the claimant denying the averments of the petition, and also the right of the petitioners to have issues framed in reference to the demand. The petitioners filed a replication and tendered four issues, the first three involving the justice and validity of the claim, and the fourth, "whether it was or was not barred by the Statute of limitations of this State, in point of fact?" The orphans court passed an order that the first three should be sent to the circuit court for trial, taking no notice of the other; and also directing that at the trial the claimant should be plaintiff and the petitioners defendants.

On the same day that this petition was filed, 11th of July 1859, Joseph Hesson, as legatee and co-executor, exhibited a petition, referring to his former petition, which was before this court on the appeal referred to, and asking that issues might be framed to test the validity and existence of the claim. The objections stated are of the same character with those relied on by the present appellants. To this petition there was an answer filed on the 22nd of July, in the recess of the court, but not verified by affidavit, and on the 26th of July, the day the order was passed on the application for issues by Yingling and Everly, and without a tender of issues on the part of Joseph Hesson, the court directed that his petition and proceedings should be consolidated with those on the part of the present appellants, that the same issues should be sent for trial, and that Joseph Hesson be admitted as a defendant to be heard on that trial, so as to have one trial and verdict. From these orders the present appeal is taken, on the part of Yingling and Everly, but Joseph Hesson does not unite in the appeal.

The first point of the appellants objects that the court did not dispose of the case in full; that is, that the order does not notice the *fourth* issue tendered. If the court had expressly refused this issue there would have been no reason for this suggestion, and then we should have had another, based on the refusal. As we view the case the question is the same in effect and substance, whether presented in one way or the

other. The order granting three issues was, in effect, a refusal of the fourth, and in this way the appellants will have the benefit of the objection, under their *second* point, which insists that they were entitled to have the question of limitations tried in a court of law.

We think that this proposition cannot be maintained. The object appears to have been to present lapse of time as a legal bar to the demand, as effectually as if pleaded in an action at law. But the law is well settled that this cannot be done in the orphans court, though "it may look to the fact of such bar, as evidence to be weighed with all other testimony in relation to any claim, in determining on its justice." 1 *Gill*, 360, *Bowling vs. Lamar*. As the jury is substituted in aid of the court to ascertain the facts, and the proceeding is to be considered all the while as within the probate powers of the orphans court, (1 *Gill*, 29; 14 *Md. Rep.*, 532,) the court of law, to which the issues may be sent, must decide on the same principles and rules that govern the orphans court. Hence, whatever benefit the appellants could have from a reliance on lapse of time in the orphans court, they may avail themselves of when the issues are tried at law, which involve the existence, legality and justice of the claim.

In cases of this kind we think the party propounding the claim should appear as plaintiff in the trial of the issues. The party applying for the issues is not entitled to be plaintiff, though in one sense he may be considered actor in the proceeding. Here the matter to be established is the appellee's claim against his testator. He could not sue himself, nor initiate proceedings with a view to issues at law. He did all that, in the first instance, the law requires; he proved his claim and offered it for allowance in his account as executor, and when contested he ought not to be deprived of the advantage of position which the burden of establishing the claim would give any other creditor of the estate. The cases referred to by the appellants do not apply as closely as their counsel contended they do. In *Brooke vs. Townshend*, 7 *Gill*, 25, the *factum* of the will was not in issue. Conceding its existence, but denying its validity, the caveators assailed it, on the

ground of want of capacity, &c. There was something on which they could commence the contest, and might well claim the opening and conclusion. In cases of justification pleaded, payment, &c., (*Kearney vs. Gough*, 5 *G. & J.*, 457,) the plaintiff opens by showing that his case is admitted by the pleadings of his adversary. But, here the claimant must commence, if the case proceeds at all, unless the appellants begin by admitting the *prima facie* proof of the demand, by reading the account and affidavit and its passage by the orphans court, and then assume the burden of disproving it, a position which we suppose they would be unwillinfg to occupy. The general rule is that the party holding the affirmative of the issue must take the burden of proof, and, under the circumstances in which the issue is presented here, the claimant ought to open and conclude.

We are of opinion that the appellants have no cause of complaint, in that the proceedings on Joseph Hesson's application were united with theirs. If an answer under oath had been filed, and issues tendered, we suppose they would have been the same, or closely similar, in both cases. One petition is almost a copy from the other as to material averments; and, presenting the same objections to the claim, we cannot perceive how different issues could have been framed. This being so, the court would have ordered a joinder of parties with a view to one trial on one set of issues. *Pegg vs. Warford*, 4 *Md. Rep.*, 386.

If any one had cause of complaint because the court, without waiting for a sufficient answer to Joseph Hesson's application for issues, gave him the benefit of the issues previously framed, we suppose it was the appellee himself. It appears, by the former petition of Joseph Hesson, 14 *Md. Rep.*, 8, as well as by the present one, that the object of these parties was the same—the defeat of this claim by alleging the same defences against its allowance—and while a union of parties to this end might injure the claimant, we do not perceive any reason why these appellants should object to it.

*Order affirmed with costs.*

(Decided June 13th, 1860.)